### In re FLORIDA POWER CORPORATION.

Docket No. 71370-EU, Order No. 5245.

Florida Public Service Commission.

'October 18, 1971.

B. Kenneth Gatlin of Madigan, Parker, Gatlin & Swedmark, Tallahassee, and Frank A. Bass, Jr., Assistant Counsel, Florida Power Corporation, for the petitioner.

Jerry E. Oxner, Tallahassee, for the Attorney General.

W. L. Weeks and Harry D. Boswell for the commission staff and the public generally.

Prentice P. Pruitt, Tallahassee, for the public generally.

Chairman JESS YARBOROUGH, Commissioners WILLIAM T. MAYO and WILLIAM H. BEVIS participated in the disposition of this matter.

BY THE COMMISSION.

The subject matter of this docket is the application of Florida Power Corporation, a public utility as defined by chapter 366, Florida Statutes, for an increase in its rates and charges for electricity generated, distributed and sold to its customers in its service area. The Florida Public Service Commission is an agency of the state of Florida created by the legislature and is vested by law (chapter 366, Florida Statutes) with exclusive regulatory jurisdiction and supervision of the rates and services of this utility. This jurisdiction is by said law made superior to that of all other boards, agencies, political subdivisions, municipalities, towns, villages or counties, and in the event of any conflict therewith all lawful acts, orders, rules and regulations of the commission in each instance prevails.

We recognize that this commission has been made the repository of awesome powers and responsibilities for regulating public utilities in the public interest for the protection of the public welfare. We do not and must not treat this public duty lightly. We have not abrogated this public trust to any person or any other agency, nor do we intend to do so. While we appreciate and encourage assistance in our regulatory proceedings by the general public, civic associations, municipalities, county governments, state agencies and state officers, we are ever mindful that the ultimate decisions rest squarely on our shoulders.

By order no. 5239, entered herein on October 7, 1971, we granted the petition of Robert L. Shevin, as attorney general of the state of Florida as a substantial consumer of the services of the applicant, and also in the capacity of representing all citizens of the state who may be consumers of such services.

We do not question the fact that the attorney general is the chief legal officer of the state of Florida. His office is created by §4(c) of article IV of the constitution of the state of Florida, and he is authorized to exercise such powers and perform such duties as may be prescribed by law. The legislature of the state of Florida has enacted chapter 16, Florida Statutes, wherein the duties and the authority of this office are specifically prescribed. §16.01, Florida Statutes, directs the following, to-wit —

> ". . .; he shall perform the duties prescribed by the constitution of this state, and also perform such other duties appropriate to his office, *as may from time to time be required of him by law, or by resolution of the legislature . . ."* (Italics supplied.)

We certainly recognize the authority of the attorney general to intervene in this proceeding representing the state of Florida as a substantial consumer of the service of Florida Power Corporation. However, we do not find in the constitution of Florida, the statutes of this state, or in the cases decided by the courts, any requirement or authorization by law or legislative resolution, by which the attorney general is the advocate of the general body of utility consumers throughout the state of Florida.

On the other hand, ample authority is found to the effect that this responsibility belongs to the Florida Public Service Commission. In the case of City of St. Petersburg v. Carter, 39 So.2d 804, the Supreme Court stated explicitly that this commission was created for the purpose of protecting the general public from unreasonable and arbitrary charges. This is not the first time this assertion has been made by us. We think that we made our position crystal clear in order no. 5005, entered in docket no. 9777-EU on December 15, 1970, in which we stated —

> In announcing our determination to pursue this investigation without further delay while others seek, for one reason or another, to perform functions which are vested primarily in this commission and which we do perform in a thorough and meaningful manner, we want it thoroughly understood by all parties in this proceeding and the public generally that we have a right to see and examine all records of every public utility under our jurisdiction. It is our practice, which we expect to continue, to have our staff of trained professional experts thoroughly and completely examine every item in the books and records of this and other

public utilities when fixing the rates which the public must pay. In this way, we can and do protect the public's interest and will continue to do so as long as the law gives us that authority. The public's interest in the rate-making process is protected by the powers and authority vested by law in this commission and the protection of that interest is not dependent upon the activity, or lack of activity, of any intervenor who seeks for one cause or another to represent the public.

The attorney general, as intervenor herein, has filed a suggestion and motion requesting the commission to direct Florida Power Corporation to pay directly, as authorized by him, a sum of money not to exceed $25,000 to an independent certified public accounting firm or a recognized public utility consulting firm, such firm to be employed and retained by the attorney general on behalf of the consumers of Florida Power Corporation, for the purpose of conducting an independent audit and investigation of the rate structure of said company. The applicant has objected to the entry of such an order and the commission heard oral argument on the motion on October 11, 1971, pursuant to notice.

The attorney general cites for authority and precedent for granting his request in this proceeding our former order no. 5122, entered in docket no. 9777-EU, wherein his request for such relief was granted. That proceeding involved an investigation of the rates and charges of Florida Power & Light Company instituted by the commission on its own motion. It should be noted that in that docket the respondent, Florida Power & Light Company, made no objection to the entry of such an order and it was granted ex parte. The principal reason for granting that motion was, however, the fact that the present attorney general had been in office for a very brief period of time and that his predecessor in office had not left sufficient funds from his appropriation to cover this cost. That situation was somewhat different from the problem with which we are now confronted. During the interim between the entry of the aforesaid order and the filing of the motion presently under consideration, the legislature has been convened into regular sessions and it enacted an appropriations act by which all state agencies and offices were funded for their operations in the current fiscal year. Surely, the legislature must have considered the need and budget request of the office of the attorney general when making the appropriation to his office. The mere fact that the legislature did not provide sufficient funds to that office for it to engage a private auditor is not, in our judgment, sufficient grounds for granting the present request. This is especially true since the applicant in this docket has vigorously protested the entry of such an order. It is our considered judgment that we must, and do

hereby recede from whatever precedent order no. 5122 may have been construed to have set. We find authority for our decision in the case of Matthews v. State, 149 So. 649 (1933), in which the Supreme Court held that an order of the commission, while quasi-judicial in character, is not res judicata of another application of exactly the same nature subsequently filed. The court further held in that case that every promulgated order of an administrative agency, such as the commission, may be superseded by another order.

We are constrained to point out now that the issue before us is not new; nor have we always held that we have lawful authority to order a utility to pay for the cost of having an outside auditor make an examination of its books and records. In the same docket referred to above, the predecessor of the present attorney general intervened and made the almost identical motion as the one before us now. We denied that motion by order no. 4920 in which we stated —

"With respect to the alternative request in the motion of the attorney general for an order requiring the utility to pay the cost to be incurred by him in connection with this proceeding, *we know of no legal authority vested in this agency whereby we may levy such costs in an investigation of this kind.*" (Italics added.)

The attorney general then sought review of order no. 4920 by his petition for a writ of certiorari in the Supreme Court in a case styled Faircloth v. Florida Public Service Commission, 243 So.2d 420. This petition was dismissed by the court upon the filing of a "Notice of Withdrawal" by the present attorney general. It is most interesting to note in his petition for withdrawal, the present attorney general stated that the commission had demonstrated a vitality and determination in the exercise of its duties which made it apparent to the office of the attorney general, as intervenor in that matter, that an efficacious investigation would be obtained. He went on to say, referring to order no. 5005, that the commission correctly stated that it has the lawful right to examine all records of every public utility under its jurisdiction and that it was the commission's intent to thoroughly examine such books and records in fixing the utility rates the public must pay.

Notwithstanding the fact that the very issue with which we are now confronted was before the Supreme Court in the petition for writ of certiorari, and most likely would have been decided except for the withdrawal of it, the present attorney general renewed his efforts to obtain an order requiring the utility to pay the cost of his employing outside consultants. As recently as April 9, 1971, we denied the motion by order no. 5098 in which we again stated —

"The commission does not have the legal authority to require the parties to share the costs of outside experts to examine the books and records of the respondent utility."

Thereafter, upon the representation of the attorney general to the effect that we possessed lawful authority to require a public utility to pay his costs of employing outside experts, we entered order no. 5122, directing the utility to pay this cost. We adopted a liberal policy in the construction of our statutory powers when dealing with the requests of the state's chief legal officer. We are now convinced that the policy adopted was much too liberal and we must adhere to our previous position in such matters. It appears to us that the duty to provide funds to the office of the attorney general for the performance of his duties is that of the legislature of this state and not the duty of a utility whose rates and charges are under attack, and, considering the foregoing, it is our considered judgment that the suggestion and motion of the attorney general must be denied.

It is therefore ordered that the motion and suggestion of Robert L. Shevin, as attorney general of the state of Florida, for the commission to direct Florida Power Corporation to pay directly, as authorized by the attorney general, a sum of money not to exceed $25,000 to an independent certified public accounting firm or recognized public utility rate consulting firm employed by him for the purpose of conducting an independent audit and investigation of the rate structure of the said company be, and the same is, denied.